1  **WO**

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

9  Equal Employment Opportunity                No. MC-16-00047-PHX-NVW
   Commission,
10                                              **ORDER**
                        Petitioner,
11
   v.
12
   VF Jeanswear, LP,
13
                        Respondent.
14

15         Before the Court is the Application Why an Administrative Subpoena Should Not

16 Be Enforced (Doc. 1), Subpoena No. PHX-15-041, issued by the Equal Employment

17 Opportunity Commission on August 12, 2015.  (Doc. 1.)  The Court has considered the

18 parties' briefing, oral argument, and supplemental briefs.  (Docs. 1, 7, 11, 16, 17, 23, 26,

19 28.)

20 **I.     BACKGROUND**

21         On July 3, 2014, Lori Bell filed a charge of discrimination with the EEOC

22 ("Charge") against VF Jeanswear, LP ("Jeanswear"), alleging discrimination based on

23 sex and age and violation of the Equal Pay Act.  Bell stated:

24         - I had been working for Respondent since September 15, 1985, and last
25           position held was Executive Sales Representative.  On February 28, 2014, I
             was forced to resign my position due to being demoted and harassed and no
26           reason given.  . . .  I was offered a position with less pay and less
             responsibilities. . . .  I requested a lateral move but it was denied.  . . .  I
27           was also subjected to harassing comments to include but not limited to my
28           manager (WL) stating "isn't great to see all they young men being

promoted in top positions and not gray hairs walking around like us". I was also subjected to less pay than similarly situated males performing substantially the same work. During my tenure with the Respondent I was not offered any higher level position than Executive Sales Representative, rather demoted to a lesser position and significantly less pay. Females are not afforded the opportunity in top level positions. Top level positions are male dominated.

- I believe I and a class of females have been discriminated against because of sex (female), in violation of Title VII of the Civil Rights Act of 1964, as amended. I have also been discriminated against because of age (48), in violation of the Age Discrimination in Employment Act, as amended. I have also been discriminated against because of sex (female), in violation of the Equal Pay Act, as amended.

On June 30, 2014, before filing the Charge, Bell filed a lawsuit against Jeanswear in Maricopa County Superior Court, alleging gender and age discrimination as well as violations of equal wage statutes. On August 28, 2014, Jeanswear removed the lawsuit to federal court. On December 18, 2014, upon Bell's request, the EEOC issued Bell a right-to-sue notice, which indicated that it was unlikely the EEOC would be able to complete its processing within 180 days from the filing of the Charge, and it would continue administrative processing of her gender and age discrimination claims.

On November 12, 2014, the EEOC sent Jeanswear its First Request for Information. On February 16, 2015, Jeanswear responded with substantial information, but objected to Request No. 10 on grounds that it was unduly burdensome and not relevant to the issues involved in the Charge. On March 26, 2015, the EEOC sent Jeanswear a modified Request No. 10. On April 13, 2015, Jeanswear renewed its objection, contending that even as narrowed, the request sought information not reasonably related to the Charge. On July 29, 2015, Jeanswear received the EEOC's first subpoena and on July 30, 2015, submitted a petition to revoke the subpoena. On August 6, 2015, the EEOC withdrew the subpoena. On August 21, 2015, Jeanswear received a second subpoena from the EEOC, which was a corrected version of the first subpoena. On August 26, 2015, Jeanswear submitted a petition to revoke the second subpoena.

Subpoena No. PHX-15-041, issued August 12, 2015 ("Subpoena") directs Respondent to:

> Submit an electronic database identifying all supervisors, managers, and executive employees at VF Jeanswear's facilities during the relevant period, January 1, 2012, to present. For each individual, provide:
>   a.   employee identification number, if applicable,
>   b.   name,
>   c.   age and sex,
>   d.   facility name and location,
>   e.   date of hire,
>   f.   position(s) held and date in each position,
>   g.   if no longer employed, provide date of termination, and reason for termination,
>   h.   last known home address, e-mail, SSN, and telephone number.

The EEOC asserts that the information sought is relevant to Bell's individual and class claims regarding lack of promotion opportunities for women and gender-based pay disparities. The EEOC also contends that the information will provide the identities of witnesses and others who may be victims of disparate treatment and may also help the EEOC formulate other requests for information. In its reply brief, the EEOC stated it is willing to narrow the scope of subparagraphs (f) and (g) of the Subpoena to require only responsive information dating back to January 1, 2012.

## II.    LEGAL STANDARD

Whenever a charge is filed with the EEOC by a person claiming to be aggrieved, alleging that an employer has engaged in an unlawful employment practice, the EEOC "shall make an investigation thereof." 42 U.S.C. § 2000e-5(b). "In connection with any investigation of a charge filed under section 2000e-5 of [Title 42], the [EEOC] or its designated representative shall at all reasonable times have access to, for the purpose of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by [subchapter VI] and is relevant to the charge under investigation." 42 U.S.C. § 2000e-8(a). The EEOC may issue an administrative subpoena requiring production of "any evidence of

any person being investigated or proceeded against that relates to any matter under investigation or in question" and may seek judicial enforcement to compel compliance. 42 U.S.C. § 2000e-9 (incorporating 29 U.S.C. § 161).

The Supreme Court recently summarized the role of the district court in enforcing an EEOC subpoena:

> A district court's role in an EEOC subpoena enforcement proceeding, we have twice explained, is a straightforward one. A district court is not to use an enforcement proceeding as an opportunity to test the strength of the underlying complaint. Rather, a district court should satisfy itself that the charge is valid and that the material requested is "relevant" to the charge. It should do so cognizant of the generous construction that courts have given the term "relevant." If the charge is proper and the material requested is relevant, the district court should enforce the subpoena unless the employer establishes that the subpoena is too indefinite, has been issued for an illegitimate purpose, or is unduly burdensome.

*McLane Co. v. EEOC*, __ U.S. __, 137 S. Ct. 1159, 1165 (2017) (internal quotation marks, alteration marks, and citations omitted). "The critical questions are: (1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation." *EEOC v. Children's Hosp. Med. Ctr.*, 719 F.2d 1426, 1428 (9th Cir. 1983), *abrogated on other grounds by Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991). When deciding whether to enforce a subpoena issued by the EEOC, "any effort by the court to assess the likelihood that the Commission would be able to prove the claims made in the charge would be reversible error." *EEOC v. Shell Oil Co.*, 466 U.S. 54, 72 n.26 (1984).

## III. ANALYSIS

### A. In the Ninth Circuit the EEOC Has Authority to Investigate a Charge of Discrimination After Issuing a Right-to-Sue Notice.

Whenever a charge is filed with the EEOC, the EEOC must investigate. 42 U.S.C. § 2000e-5(b). "If the [EEOC] determines after such investigation that there is not reasonable cause to believe that the charge is true, it shall dismiss the charge and promptly notify the person claiming to be aggrieved and the respondent of its action." *Id.*

If the EEOC dismisses the charge or has not filed a civil action within 180 days of the filing of the charge, the EEOC shall notify the charging party, who may bring a civil action within 90 days of receiving the right-to-sue notice.  42 U.S.C. § 2000e-5(f)(1).

By regulation the EEOC claims the authority to keep the charge administratively open and continue issuing administrative subpoenas against an employer, even though the charge proceeding has ended in fact after a charging party has been issued a right-to-sue notice and has brought a private action.  *EEOC v. Fed. Express Corp.*, 558 F.3d 842, 845, 854 (9th Cir. 2009).  "[E]ven though the EEOC normally terminates the processing of the charge when it issues the right-to-sue notice, it can, under limited circumstances continue to investigate the allegations in the charge, which includes the authority to subpoena information relevant to that charge."  *Id.* at 850.  In *Federal Express*, the EEOC decided to continue investigating the charge "because it involved a possible policy or pattern of discrimination affecting others."  *Id.*  The Ninth Circuit reasoned that the "EEOC's investigatory authority serves a greater purpose than just investigating a charge on behalf of an individual," and "[b]y continuing to investigate a charge of systemic discrimination even after the charging party has filed suit, the EEOC is pursuing its obligation to serve the public interest."  *Id.* at 852.

To the contrary is *EEOC v. Hearst*, 103 F.3d 462 (5th Cir. 1997), which held the charge no longer provides a basis for EEOC investigation and subpoena after the charging party has requested and received a right-to-sue notice and has brought an action.  Jeanswear acknowledges, however, that Ninth Circuit precedent controls here.

**B.    Whether the Requested Information Is Relevant to the Charge.**

"[T]he EEOC's investigative authority is tied to charges filed with the Commission . . . the EEOC is entitled to access only evidence 'relevant to the charge under investigation.'"  *EEOC v. Shell Oil Co.*, 466 U.S. 54, 64 (1984).  "Relevancy is determined in terms of the investigation rather than in terms of evidentiary relevance."  *Fed. Express*, 558 F.3d at 854.  The scope of the charge should be liberally construed:

"[T]he EEOC's investigatory power is broader than the four corners of the charge; it encompasses not only the factual allegations contained in the

charge, but also any information that is relevant to the charge. Thus, the EEOC need not cabin its investigation to a literal reading of the allegations in the charge."

*EEOC v. Kronos Inc.*, 620 F.3d 287, 299 (3d Cir. 2010). The EEOC has authority to investigate charges of discrimination beyond the alleged individual discrimination where the individual charge "raises the specter of systemic discrimination." *Fed. Express*, 558 F.3d at 855.

The Charge alleges that Jeanswear harassed and discriminated against Bell based on sex and age. The Charge further states, "Females are not afforded the opportunity in top level positions. Top level positions are male dominated." Bell claimed to have been demoted from a sales position, never held a management position, never applied for one, and never was refused or demoted from one. It also states that Bell believed that she and a class of females had been discriminated against because of sex. The EEOC contends these sufficiently "raise the specter of systemic discrimination." *See, e.g., EEOC v. United Parcel Serv., Inc.*, 587 F.3d 136, 139 (2d Cir. 2009) (per curiam) (nationwide information was relevant to religious discrimination charge stating, "I also believe that Respondent has a pattern or practice of refusing to accommodate the religious observances, practices and beliefs of its employees"). Even when systemic discrimination is not alleged, information regarding employees other than the charging party may provide reasonable and relevant context for an individual charge of employment discrimination. *Kronos*, 620 F.3d at 298; *EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 47-48 (6th Cir. 1994); *EEOC v. Roadway Express, Inc.*, 261 F.3d 634, 640 (6th Cir. 2001).

"[C]ourts have generously construed the term 'relevant' and have afforded the Commission access to virtually any material that might cast light on the allegations against the employer." *Shell Oil Co.*, 466 U.S. at 68-69. However, relevance should not be construed so broadly as to eliminate the requirement. *Id.* at 69. The requirement of relevance "is designed to cabin the EEOC's authority and prevent fishing expeditions."

*EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 653 (7th Cir. 2002); *accord Kronos*, 620 F.3d at 297.

The Ninth Circuit has not specifically addressed whether deference is owed to the EEOC's determination of relevance. Although the Fourth Circuit has deferred to the EEOC's appraisal of what is relevant because of its expertise, the Sixth Circuit has the better of it that courts are not required to defer to the EEOC's determination of relevance. *Compare EEOC v. Randstad*, 685 F.3d 433, 448 (4th Cir. 2012), *with EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 47 (6th Cir. 1994). "If Congress had meant for EEOC's determination of relevance simply to be accepted by the courts, it would not have provided for judicial review of these data requests." *Ford Motor*, 26 F.3d at 47.

The Subpoena seeks "an electronic database identifying all supervisors, managers, and executive employees at VF Jeanswear's facilities [companywide and nationwide] [from] January 1, 2012, to present,"[1] and for each individual identified production of routine employment information, such as name, contact information, age, sex, date of hire, and employment history within the company. In addition, the Subpoena seeks the reason for termination for individuals who are no longer employed by Jeanswear. Regarding positions held, date in each position, date of termination, and reason for termination, the EEOC has limited its request to require only responsive information beginning January 1, 2012.

Jeanswear contends (1) age and reason for termination are not relevant to the EEOC's investigation of whether Jeanswear denies women access to "top level" promotions and (2) the inclusion of all supervisors, managers, and executive employees exceeds what should be considered "top level" positions as described in the Charge. However, "employment context is relevant to a charge of employment discrimination." *Ford Motor*, 26 F.3d at 47 (finding comparative information "absolutely essential" to a determination of discrimination).

---

[1] The Subpoena was issued August 12, 2015.

For example, in *Kronos*, the charging party alleged she was not hired for work as a cashier, bagger, or stocker because of her disability, which caused her to receive a low score on an assessment the employer used in the hiring process. 620 F.3d at 297-98. The EEOC issued a third-party subpoena to the creator of the assessment, seeking validity studies, job analyses related to any positions at the employer's company, and other information, which the district court limited in geography, time, and job position. The Third Circuit held that the district court applied too restrictive a standard of relevance by imposing those limitations. It stated, "[T]he EEOC is entitled to information that 'may provide a useful context' for evaluating employment practices under investigation, in particular when such information constitutes comparative data." *Id.* at 298. Further, it was "entirely appropriate" for the EEOC to investigate the employer's nationwide use of the assessment for all job positions. *Id.*

In contrast, the Tenth Circuit concluded that the EEOC's subpoena for any computer files created or maintained by the employer that contained electronic data about current and/or former employees and applicants throughout the United States during a two-year period was not relevant to disability discrimination charges filed by two men who received a conditional offer of employment and were not hired after a medical screening procedure. *EEOC v. Burlington N. Santa Fe R.R.*, 669 F.3d 1154, 1158 (10th Cir. 2012). The "incredibly broad request" for all employee information nationwide was not justified as necessary to create "a carefully tailored request" for substantive information regarding two charges that alleged only individual discrimination. *Id.*

In *Royal Caribbean Cruises*, an Argentinian national filed a charge with the EEOC, alleging discrimination on the basis of disability when the employer refused to renew his employment contract after he was diagnosed with HIV and Kaposi Sarcoma, but declared fit for duty by his physician. *EEOC v. Royal Caribbean Cruises, Ltd.*, 771 F.3d 757, 759 (11th Cir. 2014). The employer admitted it terminated the employee because of his medical condition, but contended that the Americans with Disabilities Act did not apply to a foreign national employed on a Bahamian ship, Bahamas Maritime

Authority medical standards for seafarers applied, and those standards disqualified the charging party from duty at sea. The EEOC requested a list of all employees who were discharged or whose contracts were not renewed during a certain period due to a medical reason and detailed information for each, plus all persons who applied for a position within the relevant period who were not hired due to a medical reason and the same detailed information for each. The employer provided records only for employees or applicants who were United States citizens. The EEOC subpoenaed the records for non-United States citizens. The Eleventh Circuit held that the information sought regarding employees and applicants from around the world suffering from any medical condition would not shed light on the individual charge. Where the employer admitted it terminated the employee because of his medical condition, statistical data were not needed to determine whether an employer's facially neutral explanation for the adverse employment decision was pretext for discrimination. *Id.* at 761. "Although statistical and comparative data in some cases may be relevant in determining whether unlawful discrimination occurred, the EEOC was required to make some showing that the requested information bears on the subject matter of the individual complaint." *Id.* Thus, the information sought was not relevant to the charge.

Here, the Charge alleges a one-off discriminatory demotion and unequal pay.[2] Though she never held, sought, or was refused a managerial or "top" position, she said females are not afforded the opportunity of top positions. The EEOC does not demonstrate that its investigatory and subpoena powers are triggered by tips or hunches, but it contends this passage empowers it to investigate company-wide sex discrimination at Jeanswear concerning promotions. The requested information regarding all

_____

[2] The evidence at trial was that Bell was one of 17 customer sales representatives, a non-managerial position. One person had to be demoted in an undisputedly legitimate business decision. The local supervisor, a female, selected Bell for demotion over all male counterparts, despite her performance metrics superior to those of some of the males. The case had nothing to do with systemic employment practices, management jobs, or promotion.

supervisors, managers, and executive employees does not bear on unequal pay. From Bell, this passage is just a tip not bearing on her own experience or detriment.

The EEOC contends this company-wide subpoena would provide relevant context and comparative data regarding those who have been hired for or promoted to these positions. It says the reasons for termination of those no longer employed could be related to the lack of promotion opportunities.[3] Indeed, under the language of some cases, everything else about employment could provide relevant context to a discrimination charge. Those cases decline closer scrutiny of the subpoenaed evidence for how it could or could not the help the inquiry. But other cases do not stop at the outset, and they do question more specifically about the how the evidence could help before deciding relevance. The two paths can leave a trial judge at a loss, especially in circuits with both kinds of precedents.

The crux of this Court's inquiry is whether Bell's charge of demotion is enough for a companywide and nationwide subpoena for discriminatory promotion, a discriminatory practice not affecting the charging party. The answer could be yes or no, depending on which cluster of cases one yields to, and if one follows the cases that allow some inquiry, how remote the subpoena is from the discrimination in question. The "look no further" approach that the EEOC urges comes close to allowing universal investigation of any employer with a pending (or concluded) charge. But we know that is not correct.

This Court hesitates both ways but must go one way. On balance and even under a generous reading of relevance, the nationwide, companywide search for systemic discrimination in promotions to top positions is too removed from Bell's charge of one-off demotion from a sales job to be relevant in a practical sense, as opposed to the EEOC's indefinitely elastic sense. Therefore, the Application must be denied.

---

[3] This is nonsensical. Only lack of vacancies, not reasons for vacancies, can explain lack of promotion opportunities. Nor has there been any suggestion of lack of promotion opportunities.

## C.    Whether Compliance with the Subpoena Is Unduly Burdensome.

The Ninth Circuit has not specifically addressed how to measure undue burden on the respondent.  Some courts have required the respondent to show that producing the documents would seriously disrupt normal business operations.  *E.g.*, *EEOC v. Randstad,* 685 F.3d 433, 451 (4th Cir. 2012); *EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 653 (7th Cir. 2002); *EEOC v. Citicorp Diners Club, Inc.,* 985 F.2d 1036, 1040 (10th Cir. 1993).  These courts consider the cost of production relative to the company's normal operating costs to be an important factor.  *Randstad*, 685 F.3d at 452; *United Air Lines*, 287 F.3d at 653-54 (comparing personal and financial burden to the employer's resources).  However, the Seventh Circuit also said, "What is unduly burdensome depends on the particular facts of each case and no hard and fast rule can be applied to resolve the question."  *United Air Lines*, 287 F.3d at 653.

The Eleventh Circuit expressly rejected a rigid rule for finding undue burden and has included a number of factors, including balancing hardships and benefits, rather than requiring specific types of evidence or a single factor.  *EEOC v. Royal Caribbean Cruises, Ltd.*, 771 F.3d 757, 763 (11th Cir. 2014).  It agreed with the Sixth Circuit that "this court's task is to weigh the likely relevance of the requested material to the investigation against the burden to [the employer] of producing the material."  *Id.* (quoting *EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 47 (6th Cir. 1994)).  "[T]he likely relevance . . . against the burden" captures the inquiry.

First, the value of data to be gathered and created concerning all supervisors, managers, and executive employees appears to be attenuated at best. The data are not targeted at any employment practice; nor does the EEOC identify any discriminatory practice that might emerge from analysis of the extensive data it demands.  Nor does it identify specific modes of data analysis it would apply.  The incremental statistical value of polling individuals' memories and review of bulk files beyond what is available from computer sources is likely to be nil.  The EEOC's focus in its briefs is on its near-absolute right to the data, not anything specific it would do with the data to yield usable

conclusions. So the balance of relevance against burden starts with faith, hope, and mystery on the EEOC's side.

On the burden side, the Subpoena directs Jeanswear to produce an electronic database identifying all supervisors, managers, and executive employees at VF Jeanswear's facilities from January 1, 2012, to August 21, 2015. For each person identified, the Subpoena seeks name, employee identification number, Social Security number, last known contact information (address, telephone, email), age, sex, facility name and location, and date of hire. It also seeks the position, and if no longer employed at any time after January 1, 2012, the date and reason for termination.

As of August 15, 2016, Jeanswear had about 2,500 employees. Jeanswear estimated that more than 600 employees have been in a supervisor, manager, or executive position during the relevant period. It estimated that currently about 400 employees hold one of those positions. So that is about 200 people who have terminated. Jeanswear stated that it does not maintain in its ordinary course of business an electronic database with the requested information, and personnel files are maintained at the location where the employee works or reports or at an offsite location. Jeanswear estimated that it would require 24 hours of work to identify and prepare a complete list of the employees, 300 hours to retrieve and compile information that is available from its computerized personnel records, and additional time to obtain personnel files not available from its computerized personnel records. Jeanswear stated that it has only one employee with knowledge and expertise with each of its three human resources information systems and necessary security clearance to retrieve data from the systems. Based on that employee's base salary, Jeanswear estimated the cost of compliance as $10,698.00. It did not provide information regarding its normal operating costs or state whether compliance would "seriously disrupt" normal business operations, but it is apparent that diverse other people in different places would have to contribute as well.

Jeanswear asserted that compliance with the Subpoena would require compilation of data on an individual basis from three human resources information systems.

Jeanswear began using its current human resources information system, Workday, on January 1, 2015. From 2002 through December 31, 2014, it used PeopleSoft. From April 1, 1990, to 2002, it used a system known as CHRS. Because the EEOC no longer seeks employment history before 2012, it may not be necessary to retrieve data from CHRS. With its reply brief in this Court, the EEOC submitted evidence that Workday and PeopleSoft routinely permit users to create customized reports of information kept in the ordinary course of business regarding multiple employees. Human resources databases routinely include fields for employee name, identification number, birth date, social security number, date of hire, date of termination, position, change of position, work site, and contact information.[4] Both Workday and PeopleSoft permit employers to extract multiple pieces of information for multiple employees and export them to a Microsoft Excel spreadsheet. Thus, it would not be necessary for Jeanswear to prepare a narrative job history for each responsive employee, which was included in Jeanswear's estimated cost of compliance. Jeanswear has not had an opportunity to respond to this, as it came in the EEOC's reply brief.

The Court's penultimate observation on this dispute over burden is that it has not been presented to the Court in a sensible way. It progressed in the pre-subpoena, subpoena, and court litigation phases without the prompt and compromising dialog of real needs and practical burdens that civil litigators owe and district judges expect in document litigation. Instead, the demands, claims of hardship, denials of hardship, unilateral suggestions of alternatives, and rebuttals of alternatives have evolved as the briefs came in. This Court does not believe the law requires it to adjudicate an unripe and evolving process. The Court is required to adjudicate a subpoena enforcement that has already reached stasis in the earlier processes. This Court could order the parties to resume and complete the process that was not concluded when they came to court. They could then be required to submit a statement of facts on which they agree and statements

---

[4] Jeanswear did not identify what information it has kept in its computerized records.

- 13 -

of their last and best positions, identifying the specific disputes of fact on which, God forbid, they demand trial. This Court cannot be required to figure that out for the parties.

But in the specific circumstances of this case, there would be a better resolution of the dispute over hardship. The EEOC counters Jeanswear's claim of hardship from extensive non-computerized compilation of data and people's memories by asserting that Jeanswear's computer system can yield almost everything the EEOC demands. If required to decide the question of hardship, the Court would hold the EEOC to its assertion and would order Jeanswear to supply all and only the data that its computer system will yield, with no searches of files or people's memories. The Court finds that level of compliance, on balance, to be reasonable. A substantially more burdensome compliance would be unduly burdensome. The entire universe of data is not needed for statistical analysis. If this Court errs in not enforcing the subpoena because it exceeds relevance, the Court would enforce the subpoena to this extent and no further.

Finally, it is impossible to labor through this prolonged and costly dispute without noting that it is needless. The EEOC previously exerted itself to give dead charges eternal life for subpoenas, and though it succeeded in this Circuit, that success may be unstable. In this case, the EEOC presses the limits of burdensomeness and relevance in a party charge. But to get the data, the EEOC only needed to file a commissioner's charge framed as it wished.

IT IS THEREFORE ORDERED that the Application Why an Administrative Subpoena Should Not Be Enforced (Doc. 1), Subpoena No. PHX-15-041, issued by the Equal Employment Opportunity Commission on August 12, 2015 (Doc. 1) is denied.

The Clerk shall terminate this matter.

Dated this 5th day of July 2017.

_____
Neil V. Wake
Senior United States District Judge